Modified.

### In re JACKSON.
### Patent Appeal No. 3268.

Court of Customs and Patent Appeals.
April 16, 1934.

Otis A. Earl, of Kalamazoo, Mich., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant has filed his application in the United States Patent Office for a patent upon an alleged improved tamping machine. As a result of the proceedings in that office, five claims have been allowed, and two, namely, 14 and 15, have been denied by both the Examiner and the Board of Appeals. These two claims are as follows:

"14. In a machine for working cement concrete, the combination of a vibrating means comprising a motor having an unbalancing weight, a shoe rigidly connected to said vibrating means and capable of supporting the machine when applied to a mass of concrete to be worked, and a handle for manually manipulating said shoe upon the mass of concrete to be worked and presenting it in various positions thereto.

"15. In a machine for working cement concrete, the combination of a vibrating means, a shoe connected to said vibrating means to be vibrated thereby and capable of supporting the machine when applied to a mass of concrete to be worked, and a handle for manually manipulating said shoe upon the mass of concrete to be worked and presenting it in various positions thereto."

The appellant's device consists of a tool for working concrete mixture. It is used largely in working so-called dry concrete mixture, and it is shown by the affidavit of the appellant and exhibits attached thereto that its use has been very successful and widespread. Commercial success seems to be well established. The affidavit and its exhibits further disclose that, in the use of this tool, its effects, when used on the surface of a concrete mixture, are visible as much as sixteen feet below the surface.

Appellant's device consists of a heavy boatlike shoe, the bottom of which, in use, rests upon the surface of the concrete. Projecting upward from the bottom of the shoe, and attached thereto, are spaced standards, to which are attached a motor housing adapted to house a motor, preferably electric. This motor has a shaft provided with an unbalancing weight thereon. Above the motor housing are ears which receive a downward extending shank. The shank is attached to a handle, by means of which two operators may manipulate the tool. The shank and ears are pivotally connected; a cushioning disk being provided at that place. Bumpers are provided to limit the pivotal movement.

When the motor is started, due to its unbalanced condition, an extremely rapid vibration of the tool occurs. The record discloses that such vibrations are at times at the rate of 3,600 per minute. By means of the handle, the tool may be moved from place to place as needed. The effect is to disseminate moisture throughout the mass of concrete mixture, to require less water, to settle the mixture more thoroughly, and to free it from cavities and holes.

As a reference against these claims, the tribunals of the Patent Office have cited Stubbs, 1,657,727, January 31, 1928, which

reference, they held, completely anticipates appellant's disclosure. It is true that both the Examiner and the Board refer, in arguendo, to a patent to Ashmore et al. and Stubbs, 1,383,581, but said patents are not cited as references, nor do they appear in the record. The matter, therefore, will be considered alone on the Stubbs reference, 1,657,727.

Stubbs' said patent discloses a machine for "solidifying concrete and other plastic material." It consists of a platform to which is attached a motor. Arranged along the platform are a plurality of crank cases through which a crank shaft operates and which is suitably attached to the platform. Casings are formed by extending the crank cases upward, in which casings plungers and weights, shaped much like pistons and their rods, operate. The engine, by proper gearing, or the like, drives the crank shaft with its attached plungers and weights. Thus it will be seen that, as the crank shaft rotates, the plungers and weights will alternately rise to their limit and then be withdrawn, thus giving to the whole structure a jumping and pounding action.

By inclining the casings away from the perpendicular, the successive jolts will cause the tool to be moved and jerked along in the desired direction. In describing the action of this tool, the inventor says:

"* * * The material is thus compacted and solidified by the compacting effect of the inward strokes of the plungers and by the weight of the platform. The platform is alternately driven down on the material and moved forward by the constant action of the plungers with their weights. The platform will not move backward because of the friction against the compacted material. The plungers tend to lift the platform upwardly and forwardly at the same time."

Repeatedly Stubbs refers to his device, in his specification, as for "compacting material," or as a unit "for applying the force of the blows or strokes of the machine to the material to be compacted or solidified."

This, obviously, is the object and function of his device. It does not vibrate his concrete mixture, except such incidental vibrations as result from the pounding blows of the tool. The very essence of the invention of the appellant here is the vibration of the material he works with.

The unbalanced shaft of the motor in the disclosure of appellant produces a vibrating or oscillating of the shoe, which vibrates the mass, as has been seen, to a considerable depth. It is apparent, from the record that such vibrating motion produces a useful and new result when used on concrete mixture having a minimum of water content. Nothing of the kind is claimed for the Stubbs reference, and obviously no such result will follow its use. Its action is simply that of a tamper or pounder which forces and pounds the material into place.

It is stated by the Board of Appeals:

"* * * It appears that as broadly as here claimed the motor mounted on the base 1 of the reference in combination with the plunger operating mechanism has a weight 15 which is not balanced."

In our opinion, this can hardly be taken as satisfying the language of claim 14, "a vibrating means comprising a motor having an unbalancing weight." The appellant in his application shows such a weight mounted upon one side of the shaft of his motor. On the contrary, the weights in the Stubbs reference, at least when the crank cases and extended casings are vertical, are raised and lowered alternately, in a line of the vertical axes of the casings.

From the disclosure made here, we are of opinion that the appellant has made a combination which is patentable, which is not anticipated by the references, and which produces new and useful results. This being true, it follows that claims 14 and 15 should have been allowed, and the decision of the Board of Appeals is hereby reversed.

Reversed.

HATFIELD, Associate Judge, did not participate.